# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# BIG STONE GAP DIVISION

| | | |
|---|---|---|
| MELISSA S. MAYS,<br>    Plaintiff | ) <br> ) <br> ) | |
| v. | ) <br> ) | Civil Action No. 2:14cv00018 |
| CAROLYN W. COLVIN,<br>  Acting Commissioner of<br>  Social Security,<br>    Defendant | ) <br> ) <br> ) <br> ) <br> ) | **MEMORANDUM OPINION**<br><br>By: Pamela Meade Sargent<br>United States Magistrate Judge |

*I. Background and Standard of Review*

Plaintiff, Melissa S. Mays, ("Mays"), filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), determining that she was not eligible for disability insurance benefits, ("DIB"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 423 (West 2011). Jurisdiction of this court is pursuant to 42 U.S.C. § 405(g). This case is before the undersigned magistrate judge by transfer based on consent of the parties pursuant to 28 U.S.C. § 636(c)(1). Oral argument has not been requested; therefore, the matter is ripe for decision.

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a

particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "'substantial evidence.'"'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Mays protectively filed an application[1] for DIB on October 21, 2010, alleging disability as of October 9, 2008, due to multiple sclerosis, ("MS"); depression; anxiety; fatigue; and methylenetetrahydrofolate reductase, ("MTHFR")[2]. (Record, ("R."), at 217-18, 230, 234.) The claim was denied initially and on reconsideration. (R. at 85-87, 91-93, 97-99, 110-14, 116-18.) Mays then requested a hearing before an administrative law judge, ("ALJ"), (R. at 119.) A hearing was held by video conferencing on January 29, 2013, at which Mays was represented by counsel. (R. at 35-55.)

By decision dated February 11, 2013, the ALJ denied Mays's claim. (R. at 14-24.) The ALJ found that Mays met the nondisability insured status requirements of the Act for DIB purposes through December 31, 2013. (R. at 16.) The ALJ also found that Mays had not engaged in substantial gainful activity since October 9, 2008, her alleged onset date.[3] (R. at 16.) The ALJ found that the medical evidence

---

[1] Mays also filed an application for supplemental security income, ("SSI"), which was denied because her spouse earned too much income. (R. at 102-05, 221-25.)

[2] MTHFR is a genetic disorder which can result in central nervous system damage. *See* DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, ("Dorland's"), 1031 (28th ed. 1994).

[3] Therefore, Mays must show that she became disabled between October 9, 2008, the alleged onset date, and February 11, 2013, the date of the ALJ's decision, in order to be entitled to DIB benefits.

established that Mays suffered from severe impairments, namely MS; a blood disorder; fatigue; depression; and anxiety, but he found that Mays did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 16.) The ALJ found that Mays had the residual functional capacity to perform light work[4] that did not require more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, crawling and reaching; that did not require climbing ladders, ropes or scaffolds, concentrated exposure to cold, heat, wetness, humidity and vibration; that did not require moderate exposure to work hazards, fumes, odors, dusts and gases; and that required only one- to two-step job instructions. (R. at 18.) The ALJ found that Mays had no past relevant work.[5] (R. at 22.) Based on Mays's age, education, work history and residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in significant numbers in the national economy that Mays could perform, including jobs as an usher, a laminating machine operator and a tanning salon attendant. (R. at 23.) Thus, the ALJ found that Mays was not under a disability as defined by the Act and was not eligible for DIB benefits. (R. at 23-24.) *See* 20 C.F.R. § 404.1520(g) (2015).

After the ALJ issued his decision, Mays pursued her administrative appeals, (R. at 6-9), but the Appeals Council denied her request for review. (R. at 1-4.) Mays then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 404.981

---

[4] Light work involves lifting items weighing up to 20 pounds at a time with frequent lifting or carrying of items weighing up to 10 pounds. If someone can perform light work, she also can perform sedentary work. *See* 20 C.F.R. § 404.1567(b) (2015).

[5] While the ALJ noted that Mays had prior work experience, he found that her earnings did not meet the requisite substantial gainful activity earnings level. (R. at 22.)

(2015). The case is before this court on Mays's motion for summary judgment filed January 13, 2015, and the Commissioner's motion for summary judgment filed February 17, 2015.

## *II. Facts*

Mays was born in 1987, (R. at 217), which classifies her as a "younger person" under 20 C.F.R. § 404.1563(c). She has a high school education and completed a few college classes. (R. at 39, 234.) She has past work experience as a secretary, a cook and a cashier. (R. at 40, 235.) She stated that she could not work due to fatigue and pain. (R. at 41.)

Vocational expert, Mark Hileman, also testified at Mays's hearing. (R. at 49-54.) Hileman classified Mays's work as a general secretary as sedentary[6] and skilled, and her work as a cook and food service worker as light and semi-skilled. (R. at 51-52.) Hileman was asked to consider a hypothetical individual of Mays's age, education and work experience, who would be limited to light work that did not require more than occasional climbing of stairs and ramps; balancing, stooping; kneeling; crouching; crawling; and reaching; that did not require her to climb ladders, scaffolds and ropes; that did not require concentrated exposure to cold, heat, wetness, humidity and vibration; that did not require moderate exposure to working hazards, fumes, odors, dusts and gases; and that would require only one- to two-step job instructions. (R. at 52.) Hileman stated that such an individual

---

[6] Sedentary work involves lifting items weighing up to 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking or standing is often necessary in carrying out job duties. Jobs are sedentary if walking or standing are required occasionally and other sedentary criteria are met. *See* 20 C.F.R. § 404.1567(a) (2015).

could not perform Mays's past work, but could perform other jobs existing in significant numbers in the national economy, including those of an usher, a laminating machine operator and a tanning salon attendant. (R. at 52-53.) Hileman was asked to consider the same individual, but who would have no useful ability to deal with work stresses and to demonstrate reliability, and who would be absent more than three days a month. (R. at 53.) He stated that there would be no jobs available that such an individual could perform. (R. at 53.)

In rendering his decision, the ALJ reviewed medical records from Wise County Public Schools; Louis Perrott, Ph.D., a state agency psychologist; Dr. Richard Surrusco, M.D., a state agency physician; Howard S. Leizer, Ph.D., a state agency psychologist; Dr. Michael Hartman, M.D., a state agency physician; Holston Valley Hospital; Mountain View Regional Medical Center; Wise Medical Group; April Stidham, F.N.P., a family nurse practitioner; Medical Associates of Southwest Virginia; Associated Neurologists of Kingsport; Robert S. Spangler, Ed.D., a licensed psychologist; Dr. Michelle L. Brewer, M.D., a neurologist; Dr. Victoria Grady, M.D.; Dr. Shawn Christopher Smith, D.O.; Dr. Souhail Shamiyeh, M.D.; Dr. Felix E. Shepard, Jr., M.D.; Norton Community Hospital; and Susan Myers, L.C.S.W., a licensed clinical social worker.

On January 10, 2007, Dr. Michelle L. Brewer, M.D., a neurologist, reported that Mays was alert and oriented, she had fluent speech, intact memory and good fund of knowledge. (R. at 637-39.) Mays's visual fields were full to confrontation. (R. at 638.) Sensory, motor and cerebellar examinations were intact, as was her

gait. (R. at 638.) Dr. Brewer diagnosed MS with positive oligoclonal bands,[7] elevated cerebrospinal fluid with white matter lesions and an enhancing lesion in the brainstem, as well as possible venous angioma. (R. at 638.)

The record shows that Mays was treated by Dr. Souhail Shamiyeh, M.D., and April Stidham, F.N.P., a family nurse practitioner, from 2008 through 2012 for complaints of kidney stones; MS; MTHFR; anxiety; panic attacks; and shoulder pain. (R. at 351-417, 469-94, 642-64.) On December 13, 2011, Mays reported that her MS was doing well and that her symptoms of depression and anxiety were controlled with medication. (R. at 660.) On June 13, 2012, Mays reported that her symptoms of anxiety were "mild." (R. at 642.) She reported "good" symptom control with medication. (R. at 642.) Dr. Shamiyeh noted that Mays's examination was normal. (R. at 643-44.)

On October 7, 2010, Dr. Douglas A. Wright, M.D., a neurologist, examined Mays. (R. at 447-51.) Mays complained of an allergic reaction to her MS medication. (R. at 447-48.) She reported intermittent migraine headaches, anxiety and depression. (R. at 448.) Dr. Wright reported that Mays's examination was normal. (R. at 448-50.) Mays was oriented; her recent and remote memory were normal; her attention span and concentration were normal; her language was normal; and her fund of knowledge was normal. (R. at 449.) No major anxiety was noted. (R. at 449.) Mays reported that she had no complications with regard to

---

[7] Oligoclonal bands are multiple protein bands serving as markers of specific antibodies and detected by electrophoresis of cerebrospinal fluid or serum. The bands are most often seen during inflammatory or immune processes and are found in most patients with multiple sclerosis. *See* http://www.online-medical-dictionary.org/definitions-o/oligoclonal-bands.html (last visited Mar. 30, 2016).

MTHFR, and that she was doing well on medication. (R. at 447.) Dr. Wright opined that Mays's MS was stable. (R. at 447.) On October 30, 2007, an MRI of Mays's head showed MS without any new symptoms. (R. at 370.) On August 29, 2008, an MRI of Mays's brain showed that most of the previous lesions had improved, but there was a new left frontal white matter lesion and two small lesions noted at the bilateral brachium pontis. (R. at 365.) On November 13, 2008, an abdominal sonogram showed bilateral kidney stones. (R. at 358-59.) On July 31, 2009, an MRI of Mays's brain showed white matter lesions involving both cerebral hemispheres consistent with MS; the left white matter lesion showed slight progression; the left frontal coronal radiata lesion showed improvement; and the left frontal periventricular lesion showed interval progression. (R. at 356-57.) On March 7, 2012, Dr. Wright noted that Mays's MS was stable. (R. at 695.) Dr. Wright noted that Mays's examination was normal. (R. at 694-95.) On July 12, 2012, while Mays reported having headaches once a week, she stated that they did not affect her activities of daily living. (R. at 685-90.) She stated that her MS symptoms were mild. (R. at 687.) Examination was normal. (R. at 688.)

On March 15, 2011, Dr. Richard Surrusco, M.D., a state agency physician, reported that Mays had the residual functional capacity to perform light work. (R. at 63-65.) He found that Mays had a limited ability to push and/or push with both her upper and lower extremities. (R. at 63.) Dr. Surrusco opined that Mays could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; and never climb ladders, ropes and scaffolds. (R. at 63-64.) He opined that Mays's ability to reach in all directions was limited. (R. at 64.) No visual or communicative limitations were noted. (R. at 64.) Dr. Surrusco also opined that Mays could not work around concentrated exposure to extreme cold and heat;

wetness; humidity; and vibration; and she could not even be moderately exposed to hazards, including machinery and heights. (R. at 64-65.)

On March 19, 2011, Louis Perrott, Ph.D., a state agency psychologist, completed a Psychiatric Review Technique form, ("PRTF"), indicating that Mays suffered from an affective disorder and anxiety-related disorders. (R. at 61-62.) He found that Mays had mild limitations on her ability to perform her activities of daily living and to maintain social functioning. (R. at 61.) Perrott found that Mays had no difficulties in her ability to maintain concentration, persistence or pace. (R. at 61.) He opined that Mays had not experienced any episodes of decompensation of extended duration. (R. at 61.)

On June 13, 2011, Mays saw Susan Myers, L.C.S.W., a licensed clinical social worker, and reported that she was overwhelmed with fatigue and physical pain in her legs. (R. at 624.) Myers reported that Mays's mood was depressed; her affect was anxious; and her orientation and thought process were intact. (R. at 624.) Myers assessed Mays's then-current Global Assessment of Functioning, ("GAF"),[8] score at 50.[9] (R. at 624.) On July 22, 2011, Myers reported that Mays's mood was depressed; her affect was anxious; her orientation and thought process were intact; and she had fair judgment and insight. (R. at 623.) Myers reported that Mays was stable. (R. at 623.) Myers diagnosed panic disorder without agoraphobia

---

[8] The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS FOURTH EDITION, ("DSM-IV"), 32 (American Psychiatric Association 1994).

[9] A GAF score of 41-50 indicates that the individual has "[s]erious symptoms ... OR any serious impairment in social, occupational, or school functioning...." DSM-IV at 32.

and dysthymic disorder. (R at 623.) On August 12, 2011, Mays reported that, "I don't ever feel good." (R. at 622.) Myers reported that Mays's mood was depressed; her affect was anxious; her orientation and thought process were intact; and she had fair judgment and insight. (R. at 622.)

On August 24, 2011, Myers completed a mental assessment, indicating that Mays had a limited, but satisfactory, ability to maintain personal appearance and to demonstrate reliability. (R. at 626-28.) She opined that Mays had a seriously limited ability to follow work rules; to relate to co-workers; to deal with the public; to use judgment; to interact with supervisors; to maintain attention and concentration; to understand, remember and carry out simple job instructions; to behave in an emotionally stable manner; and to relate predictably in social situations. (R. at 626-27.) Myers found that Mays had no useful ability to deal with work stresses; to function independently; and to understand, remember and carry out complex and detailed job instructions. (R. at 626-27.) She opined that Mays would be absent from work more than two days a month. (R. at 628.)

On July 26, 2011, Dr. Michael Hartman, M.D., a state agency physician, reported that Mays had the residual functional capacity to perform light work. (R. at 75-78.) He found that Mays had a limited ability to push and/or pull with both her upper and lower extremities. (R. at 76.) Dr. Hartman opined that Mays could occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl; and never climb ladders, ropes and scaffolds. (R. at 76.) He opined that Mays's ability to reach in all directions was limited. (R. at 77.) No visual or communicative limitations were noted. (R. at 77.) Dr. Hartman also opined that Mays could not work around concentrated exposure to extreme cold and heat; wetness; humidity;

and vibration; and she could not even be moderately exposed to hazards, including machinery and heights. (R. at 77-78.)

On August 2, 2011, Howard S. Leizer, Ph.D., a state agency psychologist, completed a PRTF, indicating that Mays suffered from an affective disorder and anxiety-related disorders. (R. at 73-74.) He found that Mays had mild limitations on her ability to perform her activities of daily living and to maintain social functioning. (R. at 74.) Leizer found that Mays had no difficulties in her ability to maintain concentration, persistence or pace. (R. at 74.) He opined that Mays had not experienced any episodes of decompensation of extended duration. (R. at 74.)

On September 23, 2011, Robert S. Spangler, Ed.D., a licensed psychologist, evaluated Mays at the request of Mays's attorney. (R. at 630-36.) Spangler reported that Mays had awkward gross motor movements and a slow, stiff gait. (R. at 630.) He reported that Mays had age-appropriate fine motor movements, but noted that she was slow. (R. at 630.) Mays demonstrated good concentration while on prescription medication, and she was appropriately persistent on tasks. (R. at 630.) Mays's pace was impacted due to the need to shift in her seat. (R. at 630.) She had adequate recall of most remote and recent events. (R. at 631.) Her motor activity was tense; her affect was congruent; her mood was depressed and anxious; her stream of thought was unremarkable; associations were logical; her thought content was nonpsychotic; and her social skills were adequate. (R. at 631-32.) The Wechsler Adult Intelligence Scale - Fourth Edition, ("WAIS-IV"), was administered, and Mays obtained a full-scale IQ score of 85. (R. at 632.) Spangler diagnosed dysthymic disorder, chronic, early onset, moderate; generalized anxiety disorder, moderate to severe; and obsessive compulsive disorder, mild. (R. at 633.)

He assessed Mays's then-current GAF score at 50 to 55.[10] (R. at 633.)

Spangler completed a mental assessment, indicating that Mays had a limited, but satisfactory, ability to follow work rules; to use judgment; to interact with supervisors; and to maintain attention and concentration, while on medication. (R. at 634-36.) He opined that Mays had a seriously limited ability to relate to co-workers; to deal with the public; to function independently; to understand, remember and carry out simple and detailed job instructions; to maintain personal appearance; to behave in an emotionally stable manner; and to relate predictably in social situations. (R. at 634-35.) Spangler opined that Mays had no useful ability to deal with work stresses; to understand, remember and carry out complex job instructions; and to demonstrate reliability. (R. at 634-35.) He reported that Mays would be absent from work more than three days a month. (R. at 636.)

On August 18, 2012, Dr. Victoria Grady, M.D., examined Mays at the request of Disability Determination Services. (R. at 673-83.) Mays had a normal gait and motor strength in both the upper and lower extremities. (R. at 675.) Examination was normal with the exception of limited range of motion in the thoracolumbar spine and hip flexion. (R. at 677.) Dr. Grady diagnosed MS with fatigue; depression and anxiety; and MTHFR mutation. (R. at 676.)

Dr. Grady completed a medical assessment, indicating that Mays could occasionally lift and carry items weighing up to 50 pounds and frequently lift and carry items weighing up to 20 pounds. (R. at 678-83.) She found that Mays could

---

[10] A GAF score of 51-60 indicates that the individual has "[m]oderate symptoms … OR moderate difficulty in social, occupational, or school functioning…." DSM-IV at 32.

sit, stand and walk a total of eight hours a day and that she could do so for up to two hours without interruption. (R. at 679.) Dr. Grady opined that Mays could frequently reach; handle; finger; feel; push/pull; and operate foot controls. (R. at 680.) In addition, Dr. Grady found that Mays could frequently climb stairs, ramps, ladders and scaffolds; balance; stoop; kneel; crouch; and crawl. (R. at 681.) She opined that Mays could frequently work around moving machinery; operate a motor vehicle; work around humidity; wetness; and vibrations; and never work around unprotected heights, dust, odors, fumes, pulmonary irritants and extreme heat and cold. (R. at 682.) Dr. Grady reported that there would be days that Mays's examination would differ based on her symptoms for that day, including symptoms of fatigue and muscle weakness. (R. at 683.) She opined that Mays should not attempt work in a high-stress environment. (R. at 683.)

*III. Analysis*

The Commissioner uses a five-step process in evaluating DIB claims. *See* 20 C.F.R. § 404.1520 (2015); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 404.1520. If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. *See* 20 C.F.R. § 404.1520(a) (2015).

As stated above, the court's function in this case is limited to determining

whether substantial evidence exists in the record to support the ALJ's findings. The court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Mays argues that the ALJ erred by improperly determining her residual functional capacity. (Plaintiff's Memorandum In Support Of Her Motion For Summary Judgment, ("Plaintiff's Brief"), at 5-7.) Mays further argues that the ALJ erred by failing to give appropriate credence to her testimony and to properly assess the effect of pain on her ability to perform substantial gainful activity. (R. at 7-8.)

The ALJ found that Mays had the residual functional capacity to perform light work that did not require more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching, crawling and reaching; that did not require climbing ladders, ropes or scaffolds, concentrated exposure to cold, heat, wetness, humidity and vibration; that did not require even moderate exposure to work hazards, fumes, odors, dusts and gases; and that required only one- to two-step job instructions. (R. at 18.) Based on my review of the record, I do not find that substantial evidence exists to support the ALJ's finding with regard to Mays's residual functional capacity.

The ALJ found that Mays would be limited to the performance of no more than one- to two-step job instructions. (R. at 18.) The ALJ noted that he was giving "some weight" to the opinion of Dr. Grady and "little weight" to Myers's and Spangler's opinions. (R. at 21.) Dr. Grady noted that Mays should not attempt to work in a high-stress environment. (R. at 683.) This finding is consistent with the opinions of Myers and Spangler, who also found that Mays had no useful ability to deal with work stresses. (R. at 626, 634.) These mental health providers, however, placed many more restrictions on Mays's mental work-related abilities. (R. at 626-27, 634-35.)

It is the ALJ's responsibility to weigh the evidence, including the medical evidence, in order to resolve any conflicts which might appear therein. *See Hays*, 907 F.2d at 1456; *Taylor v. Weinberger*, 528 F.2d 1153, 1156 (4th Cir. 1975). Furthermore, while an ALJ may not reject medical evidence for no reason or for the wrong reason, *see King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980), an ALJ may, under the regulations, assign no or little weight to a medical opinion, even one from a treating source, based on the factors set forth at 20 C.F.R. § 404.1527(c), if he sufficiently explains his rationale and if the record supports his findings.

The ALJ noted that he was giving Myers's opinion "little" weight because she was not an acceptable medical source within the meaning of the regulations. (R. at 21.) The ALJ further noted that Myers's treatment notes did not support the severity of the limitations in her opinion. (R. at 21.) While this analysis is sparse, it is an explanation of the weight the ALJ gave this opinion. The ALJ also noted that

he was giving Spangler's opinion "little" weight. (R. at 21.) The ALJ further found that Spangler was an acceptable medical source within the meaning of the regulations. (R. at 21-22.) While the ALJ recounts Spangler's opinion on Mays's work-related mental limitations, he failed to provide any reason for rejecting it. The ALJ found that Mays suffered from the severe impairments of depression and anxiety. Therefore, the ALJ found that these impairments had a significant impact on Mays's work-related mental abilities. With the rejection of Myers's and Spangler's opinions, the ALJ had no opinion from a mental health expert regarding Mays's work-related abilities before him since neither of the state agency psychologists completed an assessment of Mays's work-related abilities. Based on this, I do not find that substantial evidence supports the ALJ's weighing of the medical evidence or the ALJ's finding with regard to Mays's residual functional capacity.

Based on the above reasoning, I further find that substantial evidence does not exist in the record to support the ALJ's finding that Mays was not disabled. An appropriate Order and Judgment will be entered.

ENTERED: March 31, 2016.

*s/ Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE